## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

**SIGNUM, LLC**

and

**NATURALAWN OF AMERICA, INC.**

    Plaintiffs,                           Case No._____

**v.**

**PEACEFUL VALLEY, INC.,**

and

**T.W. KIRTLAND, JR.,**

and

**ARLEEN D. KIRTLAND,**

    Defendants.

## <u>COMPLAINT</u>

Plaintiffs Signum, LLC and NaturaLawn of America, Inc. (collectively, "Plaintiff"), for

its Complaint against Defendants Peaceful Valley, Inc. ("PVI"), T.W. Kirtland, Jr. and Arleen D.

Kirtland, alleges as follows:

1.      Plaintiff is a highly-successful lawn care franchisor in Frederick, Maryland.  For

over 25 years, Plaintiff and its franchises have operated under a family of NATURALAWN

trademarks, including NATURALAWN and NATURALAWN OF AMERICA.  Plaintiff has

more than 60 franchisees in 23 states, and its NATURALAWN OF AMERICA-branded lawn

care services are well-known, particularly in Maryland where it is among the largest lawn care

companies and has been for many years.

2.      Until recently, Defendants Peaceful Valley, Inc. and Mr. and Ms. Kirtland (collectively, "Defendants") were a franchisee of Plaintiff in Prince George's County, Maryland. Defendants signed a Franchise Agreement and Controlling Principal Confidentiality Agreement & Covenants Not To Compete.

3.      In violation of the Franchise Agreement, Defendants (1) understated payments due to Plaintiff by over 10% every year 2012 and in increasing amounts and (2) violated the covenant not to compete by selling products through a separate business owned and operated by the Kirtlands which competed with their NaturaLawn franchise.   The Franchise Agreement provides that these are material breaches which allow Plaintiff to terminate the Agreement with notice, but without an opportunity to cure.

4.      On July 20, 2015, Plaintiff notified Defendants in writing that their franchise was immediately terminated without an opportunity to cure.   Plaintiff instructed Defendants that the Franchise Agreement and federal law required them to immediately stop all use Plaintiff's NATURALAWN trademarks, trade names, confidential customer information, and other franchise-related information.

5.      But Defendants refuse to stop using Plaintiff's trademarks, customer information and confidential commercial information and instead hold themselves out as NaturaLawn of America.   Following the termination, Defendants have continued to service customers under Plaintiff's NATURALAWN trademarks, have continued to advertise and promote themselves as NaturaLawn of America and have informed customers that Plaintiff's termination of their franchise is ineffective and that they will continue to operate as NaturaLawn of America.

## PARTIES

6.      Plaintiff Signum, LLC is a Maryland limited liability company with its principal place of business at 1 East Church Street, Frederick, Maryland.  Plaintiff NaturaLawn of America, Inc. ("NLA") is a Maryland corporation with its principal place of business at 1 East Church Street, Frederick, Maryland.  The plaintiffs have the same owners.  Signum owns the trademarks and logos asserted to be infringed by the plaintiffs in this case, including NATURALAWN and NATURALAWN OF AMERICA, and licenses those marks and logos to NLA, who in turn licenses them to its franchises.

7.      Defendant Peaceful Valley, Inc. ("PVI") is a Maryland corporation with its principal place of business at 5042 Church Road, Bowie, Maryland 20720-4911.  PVI signed the Franchise Agreement attached as Exhibit 1, and Attachment I - Franchisee and Controlling Principal Confidentiality Agreement & Covenants Not To Compete, attached as Exhibit 2.

8.      Defendants T.W. Kirtland, Jr. and Arleen D. Kirtland (collectively, "the Kirtlands") are individuals and controlling principals of PVI and knowingly committed, authorized and directed the unlawful acts that are described herein.  The Kirtlands reside at 5042 Church Road, Bowie, Maryland 20720-4911.  The Kirtlands executed the Franchise Agreement and Attachment I - Franchisee and Controlling Principal Confidentiality Agreement & Covenants Not To Compete in their personal capacity and on behalf of PVI.

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction over the federal claims in this action pursuant to 28 U.S.C. §§ 1331 and 1338 and 15 U.S.C. § 1121, and over the state law claims pursuant to 28 U.S.C. § 1367.

10.     This Court has personal jurisdiction over Defendants because, among other things, pursuant to Section 30(I) of the Franchise Agreement, Defendants consented "to submit themselves to the jurisdiction of the state and the federal district courts located in the state, county or judicial district in which [Plaintiff's] principal place of business is located." *See* Ex. 1. Furthermore, Defendants are residents of Maryland.

11.     Venue is proper under 28 U.S.C. § 1391(b)(2) and because, pursuant to Section 30(I) of the Franchise Agreement, Defendants agreed that the venue for any dispute concerning or relating to the Franchise Agreement shall be in "the judicial district in which [Plaintiff's] principal place of business is located. *See* Ex. 1.

## FACTS GIVING RISE TO PLAINTIFF'S CLAIMS

### *Plaintiff and its NATURALAWN Trademarks*

12.     Plaintiff is a leader in the provision of organic lawn care and integrated pest management services, and the franchising of such services.  For over 25 years, Plaintiff and its franchisees have advertised and sold lawn care services under Plaintiff's federally registered NATURALAWN trademarks.  Plaintiff owns a website located at **www.naturalawn.com**, which uses Plaintiff's trademarks to advertise Plaintiff's lawn care services and related goods and services.  Over the years, Plaintiff has invested tens of millions of dollars in advertising and promoting its services under the NATURALAWN marks.  Sales of Plaintiff's NATURALAWN-branded services are substantial.  In 2014, Plaintiff and its franchisees earned over $50 million dollars in revenues.

13.     Plaintiff owns U.S. Trademark Registration Nos. 2,543,921 and 2,575,105 for NATURALAWN and NATURALAWN OF AMERICA (and Sun Design) for lawn care services and related goods and services ("Plaintiff's Marks").   A true and correct copy of those

4

registrations is attached as Exhibit 3.  Those registrations have achieved "incontestable" status under the Lanham Act and thus are "conclusive evidence" of Plaintiff's "exclusive right" to use these marks for lawn care services in United States commerce.  15 U.S.C. §§ 1065, 1115(b).

14.     Plaintiff has over 60 franchises in 23 states providing lawn care services under Plaintiff's Marks.   Plaintiff's Marks have acquired significant goodwill and are widely recognized, particularly in Maryland which is and always has been Plaintiff's primary place of business and where Plaintiff serves over 16,000 customers.  The public associates Plaintiff's Marks exclusively with lawn care services rendered by Plaintiff and its franchisees, and have done so for decades.

### The Franchise Agreement and Defendants' Breaches Leading to Termination

15.     On September 19, 2012, Plaintiff and Defendants entered into a Franchise Agreement, pursuant to which Defendants were granted an exclusive license to operate a franchised business in Prince George's County, Maryland.  (*See* Ex. 1, Attachment B.)  That same date, Plaintiff and Defendants entered into a Franchisee and Controlling Principal Confidentiality Agreement & Covenants Not to Compete, referenced as Attachment I to the Franchise Agreement.  (Ex. 2.)

16.     Section 10(A)(2) of the Franchise Agreement requires that Defendants submit to Plaintiff "a statement of all Gross Sales from the operation of the Franchised Business, and a profit and loss statement for the previous month."  (*Id.*)  Section 8 states that Defendants would pay to Plaintiff a service fee in an amount equal to 9% of the Gross Sales. (*Id.*)

17.     Section 18(D)(2)(9) Franchise Agreement provides that "any inspection of Franchisee's records [that] discloses an understatement of payments due Franchisor of ten

percent (10%) or more" is grounds for immediate termination, with notice but without opportunity to cure. (*Id.*)

18.     In July 2015, Plaintiff inspected Defendants' records and learned that Defendants had understated payments due Plaintiff every year since at least 2012 by more than 10% and that the understatements were increasing with each passing year.

19.     Plaintiff also learned that the Kirtlands Defendants owned JTA Enterprises, LLC, which sold Plaintiff's Natural Alternative Ice Melt product, as well as third-party pest control products in competition with Defendants' NaturaLawn franchise. (*See* Ex. 4, which are true and correct screen captures of the JTA Enterprises, LLC web site dated July 30, 2015, July 22, 2015, and February 16, 2015.)

20.     The Kirtlands' ownership of a separate business that sold Plaintiff's Natural Alternative Ice Melt and third-party pest control products violated the Covenant Not to Compete forbidding the Kirtlands from "acquir[ing] any financial or beneficial interest" in any other business "similar to the Business operated by the Franchisee." (Ex. 2 at pp. 2-3.)

21.     Violation of the Covenant Not to Compete is a ground for termination of the Franchise Agreement without an opportunity to cure. (Ex. 1, Section 18(D)(2)(6).)

22.     On July 20, 2015, Plaintiff sent Defendants a letter via certified mail outlining Defendants' material breaches of the Franchise Agreement.   The letter served as a formal notice of Termination with Notice, Without Opportunity Cure under Section 18(D)(2) of the Franchise Agreement.  Plaintiff stated that Defendants were immediately terminated without opportunity to cure pursuant to provision 18(D)(2)(9) because Plaintiff's audit of Defendants' records had disclosed an understatement of payments due Plaintiff by ten percent (10%) or more, and pursuant to 18(D)(2)(6) because Defendants had violated the covenant not to compete by

becoming principals of JTA Enterprises LLC and selling Plaintiff's Natural Alternative ice melt product on its web site without Plaintiff's permission.   Plaintiff also listed a number of Defendants' additional breaches of the Franchise Agreement.   Plaintiff instructed Defendants to immediately discontinue all use of Plaintiff's trademarks, customer information, customer lists and manuals, and other materials, to return all manuals, to identify Defendants' customers, and to arrange for the transfer of the phone number associated with the franchise to Plaintiff.   On July 29, 2015, Defendants responded to Plaintiff's letter.   Defendants stated that Plaintiff's termination was invalid and of no effect and indicated their intent to continue operating a NaturaLawn franchise.

23.   After receiving Plaintiff's July 20 letter, the Kirtlands Defendants removed the Natural Alternative Ice Melt product from the website for JTA Enterprises, LLC.   But screen captures reveal that the product was listed for sale on that site as recently as July 22, 2015 – just after Defendants received Plaintiff's letter – and was removed shortly thereafter (Ex. 4 at 4-5.)

24.   Section 20(B) of the Franchise Agreement provides that upon termination, Defendants must cease use of Plaintiff's Marks and any confusingly similar marks.  (Ex.1.)

25.   Section 20(B) of the Franchise Agreement provides that upon termination, Defendants must "turn over to [Plaintiff] all customer lists."   Defendants acknowledged that all "customers and data are the property of [Plaintiff]."   (*Id.*)

26.   Section 20(A)(l) of the Franchise Agreement provides that upon termination, Defendants must "turn over to [Plaintiff] the original and all copies of any records (digital, computer generated and/or manually duplicated) of the names and addresses and telephone numbers of all customers and clients up to and including the date of expiration, termination, or discontinuance, together with all files pertinent to such current and past customers, prospects

and/or clients in the Licensed Territory; further [Defendants agree] to retain no such information." (*Id.*)

27.     Section 20(A)(2) of the Franchise Agreement requires that upon termination, Defendants shall "cooperate with [Plaintiff] to make the necessary arrangements with the telephone company and any Internet service provider to immediately transfer and assign to [Plaintiff] the telephone service, including the telephone listing and numbers, Internet accounts, e-mail addresses, or any similar listings, which shall become the absolute property of Franchisor." (*Id.*)

28.     Plaintiff and Defendants signed Attachment C to the Franchise Agreement, "Telephone Listing Authorization Agreement."  Attachment C provides:

> Upon expiration, termination or discontinuance of the License or upon the expiration of [Defendants'] association with [Plaintiff], or upon the discontinuance of the Business, [Defendants] acknowledge[] that [Defendants'] right to the use of the trade name and service mark "Naturalawn of America" and any other trade name, trade mark or service mark that is or has been used in connection with the NaturaLawn of America business, is immediately ended and that any and all telephone numbers . . . appearing under the Naturalawn of America name or used in conjunction with the business shall immediately become the property of [Plaintiff], and [Defendants] do[] hereby release all rights and use of all telephone and/or fax numbers associated with NaturaLawn of America is listed or has been used in conjunction with the business.

> (*Id.*)

29.     Section 20(A)(3) of the Franchise Agreement provides that upon termination, Defendants must immediately pay all service fees owing to Plaintiff.  (*Id.*)

30.     Section 11(B) of the Franchise Agreement contains the following non-compete provision upon termination:

> [Defendants], for a period of twenty-four (24) months after termination of this Agreement for any reason (or the date such person ceases to be a Controlling Principal), whether directly or indirectly, shall not engage in or acquire any financial or beneficial interest, including, without limitation, any interest in corporations, partnerships, trusts, incorporated associations or joint ventures, in, assist or become a landlord of any lawn

care or landscaping business, which is similar to the Business operated by [Defendants], within the Licensed Territory or within the licensed territory of any [Plaintiff] franchisee or within a twenty (20) miles radius of the perimeter of the Licensed Territory or any licensed territory of any [Plaintiff] Business, whether such [Plaintiff] Business is operated by another franchisee of [Plaintiff] or by [Plaintiff], or a subsidiary or affiliate of [Plaintiff]."

(*Id.*)

31.     Section 11(C) of the Franchise Agreement provides that Defendants "shall not appropriate, use or duplicate [Plaintiff's] system, or any portion thereof, for use at any other lawn care, landscaping or other business other than the Franchised Business." *Id.*

32.     Plaintiff and Defendants signed the Franchise Agreement's Attachment I, "Franchisee & Controlling Principal Confidentiality Agreement & Covenants Not to Compete." (Ex. 2.)  Paragraph 1 of the Confidentiality Agreement provides that "[a]ll information and materials, including, without limitation, any and all manuals, specifications, techniques and compilations of data which [Plaintiff] provides to [Defendants] shall be deemed confidential Trade Secrets for the purposes of this Agreement."  (*Id.*)

33.     Paragraph 5 of the Confidentiality Agreement provides that "[Defendants] shall surrender all material containing any of the Trade Secrets to Franchisor, upon request, or upon termination, expiration or discontinuance of the Franchise Business."  (*Id.*)

34.     Paragraph 2 of the Covenants Not to Compete in Attachment I provides:

[Defendants] agree[] and covenant[] that for a period of twenty-four (24) months following the earliest occurrence of any of the following events; Expiration, termination, cease to operate the business or transfer of the Franchise License, [Defendants] will not without the prior written consent of [Plaintiff]:  Directly or indirectly, for themselves or through, on behalf of or in conjunction with any person, engage in or acquire any financial or beneficial interest, including, without limitation, any interest in corporations, partnerships, trusts, incorporated associations or joint ventures, in assist or become a landlord of any lawn care business, landscape business, or seasonal landscape lighting business and/or holiday lighting business or any other business which is similar to the Franchised Business, within the Licensed Territory or within the licensed territory of any other [Plaintiff] franchisee, or within a twenty (20) mile radius of the perimeter of the

Licensed Territory or any licensed territory of any [Plaintiff] Business, whether such [Plaintiff] Business is operated by another franchisee of [Plaintiff] or by [Plaintiff], or a subsidiary or affiliate of [Plaintiff].

(*Id.*)

35.     Attachment 1 further provides that Defendants:

agree[] that in the event of a breach of this Agreement, [Plaintiff] would be irreparably injured and be without an adequate remedy at law.  Therefore, in the event of such a breach, or threatened or attempted breach of any of the provisions of this Agreement, [Plaintiff] shall be entitled to enforce the provisions of this Agreement and shall be entitled, in addition to any other remedies which are made available to it at law or in equity, including the right to terminate the License, to a temporary and/or permanent injunction and a decree for the specific performance of the terms of this Agreement, without the necessity of showing actual or threatened harm and without being required to furnish a bond or other security.

(*Id.*)

### *Defendants' Continuing Material Breaches of the Franchise Agreement and Infringement of Plaintiff's Marks*

36.     In violation of Section 20(B) of the Franchise Agreement, Defendants are using Plaintiff's Marks in connection with operating a lawn care business and advertising and rendering lawn care services to the public.  For example, on July 29, 2015, Defendants emailed letter to customers, using a header containing Plaintiff's federally registered trademark and logo. (Ex. 5.)

37.     In violation of Attachment 1, Confidentiality Agreement ¶ 2, Defendants have emailed a letter to customers claiming to have been wrongfully terminated, and thus injuring the goodwill of Plaintiff's Marks.  (*Id.*)

38.      In violation of Section 20(A)(3) of the Franchise Agreement, Defendants have not returned to Plaintiff customer and client files, as well as operating manuals and other proprietary materials.

39.     In violation of Section 20(B) and Attachment I of the Franchise Agreement, Defendants are using Plaintiff's confidential information and trade secrets, including Plaintiff's practices, products, techniques, processes, customer lists, and know-how in continuing to operate a lawn care business.

40.     In violation of Section 11(B) and Attachment I of the Franchise Agreement, Defendants are offering lawn care services to customers within the territory that they used to serve when they were Plaintiff's franchisee.

41.     In violation of Section 20(A)(2) of the Franchise Agreement and Attachment C of the Franchise Agreement, Defendants have not transferred the telephone number of their former franchise to Plaintiff.  Defendants continue to take telephone calls from actual and potential customers at their telephone number (301)-352-7884 and hold themselves out as NaturaLawn of America during those telephone calls and on their answering machine at that number.

42.     In violation of Section 20(A)(3) of the Franchise Agreement, Defendants have failed to pay outstanding service fees owed to Plaintiff or to provide an accurate accounting.

43.     Defendants' use of Plaintiff's Marks following the termination of the Franchise Agreement is calculated to cause consumers to falsely believe that Defendants are Plaintiff's franchisee and are providing lawn care services that are approved by Plaintiff.

44.     Defendants' breaches of the Franchise Agreement and related agreements are material, willful and intentional.  Defendants are profiting from Plaintiff's goodwill and reputation and the misuse of Plaintiff's intellectual property and confusing the consuming public.

45.     Plaintiff has lost control over the nature and the quality of the goods and services that are being advertised and sold under Plaintiff's Marks.

## COUNT I

**TRADEMARK COUNTERFEITING, TRADEMARK INFRINGEMENT, UNFAIR COMPETITION, FALSE DESIGNATION OF ORIGIN AND FALSE ADVERTISING UNDER THE LANHAM ACT (15 U.S.C. §§ 1114, 1125)**

46.     Plaintiff realleges paragraphs 1 through 45.

47.     Plaintiff owns federally registered and common law marks for NATURALAWN and NATURALAWN OF AMERICA for lawn care services and related goods and services.

48.     Despite the valid termination of the Franchise Agreement, Defendants are using Plaintiff's NATURALAWN and NATURALAWN OF AMERICA marks to advertise and promote a lawn care business and to render lawn care services to customers.

49.     Defendants' unauthorized use of Plaintiff's Marks constitutes the knowing and willful use of a counterfeit mark, because Defendants are using Plaintiff's federally registered marks to sell the same services, i.e., lawn care services, identified in Plaintiff's trademark registrations.

50.     Defendants' unauthorized use of Plaintiff's Marks constitutes trademark counterfeiting, trademark infringement, unfair competition and false designation of origin, in violation of the federal Lanham Act, 15 U.S.C. §§ 1114 and 1125, because such conduct is likely to cause confusion, mistake or deception as to the source, origin, affiliation, connection or association of Defendants' services and business activities.  Consumers will falsely believe that the lawn care services being offered and sold by Defendants is endorsed by Plaintiff.

51.     Defendants' wrongful conduct has deprived Plaintiff of its right to control the reputation and goodwill associated with Plaintiff's Marks.

52.     Plaintiff has suffered damages and Defendants have obtained profits and/or unjust enrichment as a result of Defendants' wrongful conduct.

53.     Defendants' use of Plaintiff's Marks is irreparably injuring Plaintiff and will cause further irreparable injury for which Plaintiff has no adequate remedy at law.

## COUNT II

### TRADEMARK INFRINGEMENT, UNFAIR COMPETITION, AND FALSE DESIGNATION OF ORIGIN UNDER MARYLAND LAW

54.     Plaintiff realleges paragraphs 1 through 53.

55.     Plaintiff owns federally registered and common law marks for NATURALAWN and NATURALAWN OF AMERICA for lawn care services and related goods and services.

56.     Despite the valid termination of the Franchise Agreement, Defendants are using Plaintiff's NATURALAWN and NATURALAWN OF AMERICA trademarks to advertise and promote a lawn care business and to render lawn care services to the customers.

57.     Defendants' unauthorized use of Plaintiff's Marks constitutes trademark infringement, unfair competition and false designation of origin in violation of Maryland law because it is likely to cause confusion, mistake, or deception as to the source, origin, affiliation, connection or association of Defendants' services, and business activities.  Consumers are likely to falsely believe that Defendants' services and business activities are approved, endorsed, or sponsored by Plaintiff, or are otherwise affiliated or associated with Plaintiff.

58.     Defendants' wrongful conduct has deprived Plaintiff of its right to control the reputation and goodwill associated with Plaintiff's Marks.

59.     Defendants' use of Plaintiff's Marks is irreparably injuring Plaintiff and will cause further irreparable injury for which Plaintiff has no adequate remedy at law.

## COUNT III

### VIOLATION OF MARYLAND UNIFORM TRADE SECRETS ACT

60.     Plaintiff realleges paragraphs 1 through 59.

61.     On information and belief, Defendants' conduct in using Plaintiff's trade secrets, including without limitation, Plaintiff's practices, products, techniques, processes, customer lists, and know-how, is in violation of the Maryland Uniform Trade Secrets Act, Md. Code. Ann., Com. Law. § 11-1201 *et seq.*

62.     The aforementioned trade secrets (a) derive independent economic value to Plaintiff, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from their disclosure or use; and (b) are the subject of efforts by Plaintiff that are reasonable under the circumstances to maintain their secrecy.

63.     Defendants have in the past and are continuing to misappropriate Plaintiff's trade secrets by disclosing and/or using such trade secrets, of which they owed a duty to Plaintiff to maintain their secrecy.

64.     As a result of Defendants' conduct, Plaintiff has suffered and will continue to suffer damages, including without limitation, diverted business and past and future revenue.

65.     Defendants' conduct constitutes willful misconduct, malice, fraud, wantonness, oppression and/or such gross indifference and recklessness as to amount to a wanton or willful disregard of the rights of Plaintiff.

66.     Plaintiff will continue to suffer irreparable harm as a result of Defendants' continuing disclosure and/or use of Plaintiff's trade secrets, for which there is no adequate remedy at law.

## COUNT IV

## BREACH OF CONTRACT

67.     Plaintiff realleges paragraphs 1 through 66.

68.     The Franchise Agreement and the related agreements are valid and enforceable contracts.

69.     Defendants' conduct in continuing to operate a NaturaLawn of America franchise, and using Plaintiff's confidential information and trade secrets after the franchise has been terminated, breaches Sections 11 and 20 of the Franchise Agreement and Attachment I to the Franchise Agreement.

70.     Defendants' failure to turn over to Plaintiff all customer lists, customer files, operating manuals and proprietary records other records breaches Section 20 of the Franchise Agreement.

71.     Defendants' failure to pay outstanding service fees to Plaintiff breaches Section 20 of the Franchise Agreement.

72.     Defendants' failure to cooperate in transferring telephone numbers to Plaintiff breaches Attachment C to the Franchise Agreement.

73.     The Franchise Agreement is governed by Maryland law, which imputes a covenant of good faith and fair dealing in every contract.

74.     Defendants' conduct constitutes one or more breaches of the covenant of good faith and fair dealing.

75.     As a result of Defendants' breaches of the Franchise Agreement and the covenant of good faith and fair dealing, Plaintiff has suffered and will continue to suffer damages, including without limitation, diverted business and past and future revenue.

76.     The revenue realized by Defendants from their breaches of the Franchise Agreement is unknown to Plaintiff.

77.     Plaintiff will continue to suffer irreparable harm as a result of Defendants' continuing breaches of the Franchise Agreement and covenant of good faith and fair dealing, for which there is no adequate remedy at law.

## JURY DEMAND

Plaintiff requests a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

Plaintiff requests that the Court grant the following relief:

A.     A preliminary and permanent injunction enjoining Defendants, their controlling principals, employees, owners, agents, officers, directors, attorneys, representatives, affiliates, subsidiaries, and successors and assigns, and all those in active concert or having knowledge of the causes of action, from: engaging in the acts alleged above that breach the Franchise Agreement, using Plaintiff's trade secrets, including its customer lists and proprietary information, and using Plaintiff's Marks or other intellectual property;

B.     A preliminary and permanent injunction requiring Defendants, their controlling principals, employees, owners, agents, officers, directors, attorneys, representatives, affiliates, subsidiaries, and successors and assigns, and all those in active concert or having knowledge of the causes of action to return to Plaintiff all customer lists, clients lists, operating manuals and all other materials required to be returned under the Franchise Agreement;

C.     A preliminary and permanent injunction requiring Defendants, their controlling principals, employees, owners, agents, officers, directors, attorneys, representatives, affiliates, subsidiaries, and successors and assigns, and all those in active concert or having knowledge of

the causes of action to transfer Defendants' telephone number while it was a franchisee to Plaintiff;

D.      A preliminary and permanent injunction requiring Defendants, their controlling principals, employees, owners, agents, officers, directors, attorneys, representatives, affiliates, subsidiaries, and successors and assigns, and all those in active concert or having knowledge of the causes of action to contact all third parties that are using Plaintiff's Marks to refer to Defendants' business, including all Yellow Page listings, Yelp listings and the like, and to direct those parties to immediately stop all such use;

E.      A preliminary and permanent injunction requiring Defendants, their controlling principals, employees, owners, agents, officers, directors, attorneys, representatives, affiliates, subsidiaries, and successors and assigns, and all those in active concert or having knowledge of the causes of action to issue a written statement, in a form approved by Plaintiff, to all of their customers and former customers informing them that Defendants had been properly terminated due to their violations of the Franchise Agreement;

F.      An award of enhanced actual damages suffered by Plaintiff as a result of Defendants' breach of the Franchise Agreement and covenants not to compete, as well as the covenants of good faith and fair dealing, in an amount to be determined at trial;

G.      An award of enhanced actual damages and Defendants' profits earned on account of the misappropriation of Plaintiff's trade secrets;

H.      An award of treble damages and treble the profits that Defendants earned from the unauthorized use of Plaintiff's Marks;

I.      An award of statutory damages in the amount of no less than $2,000,000.00 per counterfeit mark on account of Defendants' knowing use of Plaintiff's federally registered trademarks to promote and sell lawn care services;

J.      An award of the fees owed to Plaintiff under the Franchise Agreement;

K.      An award of Plaintiff's reasonable costs and attorneys' fees incurred in connection with this action, including pursuant to the Franchise Agreement and the Lanham Act;

L.      Punitive damages; and

M.      Other relief as the Court deems just and necessary.


Dated: July 31, 2015                              Respectfully submitted,

                                                  /s/ John J. Dabney
                                                  John J. Dabney (Bar No. 17795)
                                                  Katie Bukrinsky (to file for admission)
                                                  McDermott Will & Emery LLP
                                                  500 North Capitol Street NW
                                                  Washington, DC 20001
                                                  Telephone:  202.756.8000
                                                  Facsimile:  202.756.8087 fax

                                                  *Counsel for Plaintiffs Signum, LLC and
                                                  NaturaLawn of America, Inc.*